THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. MAX C. GARTNER, Defendant-Appellee.
Second District   No. 84—0418

Opinion filed April 10, 1986.

114

Dennis Schumacher, State's Attorney, of Oregon (Patrick Delfino, of State's Attorneys Appellate Service Commission, of counsel), for the People.

No brief filed for appellee.

JUSTICE SCHNAKE delivered the opinion of the court:

The State appeals from an order of the circuit court of Ogle County dismissing charges of aggravated battery against defendant, Max C. Gartner, on the grounds of double jeopardy, and challenges the trial court's judgment as erroneous.

Defendant was charged by an information filed on January 3, 1984, with aggravated battery by intentionally causing great bodily harm in violation of section 12—4(a) (Ill. Rev. Stat. 1983, ch. 38, par. 12—4(a)). At defendant's initial appearance in court on January 6, 1984, bond was set at $75,000. The requisite 10% cash deposit was posted the same day.

Defendant was represented by counsel at proceedings held on January 17, 1984. At that time defendant waived his right to a preliminary hearing and entered a plea of not guilty. The court continued the condition of defendant's bond that prohibited any direct or indirect contact or communication with the victim.

On February 16, 1984, defendant filed a motion to dismiss the information. It alleged that the information was insufficient and also that it was barred by reason of a finding in Winnebago County that defendant had violated an order of protection entered pursuant to the Illinois Domestic Violence Act (Ill. Rev. Stat. 1981, ch. 40, par. 2301—1 et seq.) in a pending dissolution case.

Proceedings on the motion to dismiss were conducted on February 16, 1984. In support of the motion, defense counsel stated that the defendant had been found in violation of an order of protection in

Winnebago County on January 13, 1984, based on the same facts at issue in the Ogle County aggravated battery information. In support of this position defendant cited the case of *People v. Gray* (1977), 69 Ill. 2d 44, *cert. denied* (1978), 435 U.S. 1013, 56 L. Ed. 2d 395, 98 S. Ct. 1887. Continued proceedings were conducted on February 21, 1984. Defense counsel waived further argument, subject to rebuttal, and the prosecutor stipulated to the facts as related above. Citing *Illinois v. Vitale* (1980), 447 U.S. 410, 65 L. Ed. 2d 228, 100 S. Ct. 2260, the State argued that the prior contempt proceedings and the aggravated battery prosecution involved different elements. In rebuttal, the defense reasserted its reliance on *People v. Gray* (1977), 69 Ill. 2d. 44, and noted that the Ogle County authorities had been aware of the proceedings in Winnebago County.

An order granting the motion to dismiss on double jeopardy grounds was entered April 10, 1984. On April 26, 1984, the State moved to have the court determine whether defendant was indigent and required counsel for purposes of appeal. Notice of appeal was filed on May 7, 1984.

■ To be noted initially is that no appellee's brief was submitted with this appeal. The record indicates that defendant requested appointment of counsel, but after he had filed an affidavit of assets and liabilities, the court found him not to be indigent, and his request for appointed counsel was denied. Since this court has not been notified of representation by private counsel, it must be assumed that defendant is not represented on appeal. Nevertheless, pursuant to *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, we entertain this appeal.

The central question is whether the United States Supreme Court decision in *Illinois v. Vitale* (1980), 447 U.S. 410, 65 L. Ed. 2d 228, 100 S. Ct. 2260, requires a reversal of the trial court's order finding defendant's prosecution for aggravated assault barred by the constitutional protections against multiple jeopardy. The State acknowledges that the case of *People v. Gray* (1977), 69 Ill. 2d 44, *cert. denied* (1978), 435 U.S. 1013, 56 L. Ed. 2d 395, 98 S. Ct. 1887, relied upon by defendant is substantially indistinguishable from the present case, but it argues that the *Gray* holding has been implicitly overruled by the *Vitale* decision.

In *Gray* defendant was indicted for aggravated battery and attempted murder for striking and shooting his wife. However, defendant had previously been tried, found in contempt of court and punished for violation of a protective order in a divorce proceeding, based on the same conduct. The majority of the *Gray* court held that the

aggravated battery conviction violated the constitutional protection against multiple jeopardy.

In *Gray*, the court stated that the pivotal question was whether the offenses of criminal contempt and aggravated battery constituted the same offense for purposes of double jeopardy. To make this determination the court defined the appropriate test as: "Would the same evidence sustain the proof of each offense?" (*People v. Gray* (1977), 69 Ill. 2d 44, 49.) The *Gray* court relied on the United States Supreme Court's reasoning in *Brown v. Ohio* (1977), 432 U.S. 161, 53 L. Ed. 2d 187, 97 S. Ct. 2221, which in turn reiterated the test as stated in *Blockburger v. United States* (1932), 284 U.S. 299, 304, 76 L. Ed. 306, 309, 52 S. Ct. 180, 182:

> "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. ***"

The Brown court went on to state:

> "This test emphasizes the elements of the two crimes. 'If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes. ***' *Iannelli v. United States*, 420 U.S. 770, 785 n.17 [43 L. Ed. 2d 616 n.17, 95 S. Ct. 1284 n.17] (1975).
>
> If two offenses are the same under this test for purposes of barring consecutive sentences at a single trial, they necessarily will be the same for purposes of barring successive prosecutions." *Brown v. Ohio* (1977), 432 U.S. 161, 166, 53 L. Ed. 2d 187, 194, 97 S. Ct. 2221, 2225-26.

The *Gray* court added, however, that as stated in *Ashe v. Swenson* (1970), 397 U.S. 436, 25 L. Ed. 2d 469, 90 S. Ct. 1189, even if the two offenses differed so as to permit the imposition of consecutive sentences, successive prosecutions were nonetheless barred where the second offense required litigation of factual issues determined by the first. (*People v. Gray* (1977), 69 Ill. 2d 44, 50.) The court concluded that by applying a nontechnical evaluation of the "same evidence" test and by focusing upon the similarity of the elements involved in the two proceedings, it was manifest to it that the defendant in *Gray* was prosecuted and punished twice for the same offense based on the same conduct, namely the striking and shooting of his wife. 69 Ill. 2d 44, 51-52.

In the present case the State questions whether the *Gray* court

properly applied the *Blockburger* test. It submits that in *Gray* the court accorded the "same evidence" test too broad an interpretation by concentrating on the course of conduct subject to proof in both proceedings, rather than on the minimum proof demanded by the definition of the separate offenses. By analyzing the offenses involved in the case at bar, the State concludes that they were not the same for purposes of the *Blockburger* test. It argues that the aggravated battery in violation of section 12—4(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 12—4(a)) involves the element of intentionally causing great bodily harm, whereas the order of protection required that the defendant "not in any way strike, threaten, harass or interfere with the personal liberty of plaintiff," nor "initiate contact or attempt to initiate contact with plaintiff." Therefore, by comparing the elements of the two offenses, the State points out that the statutory crime involved the element of great bodily harm which was not necessary for a violation of the domestic violence order, whereas contempt involved a finding of the existence and violation of a binding court order. Thus each involved elements of proof not required by the other, thereby satisfying the *Blockburger* test. In substance, the State's argument on appeal is similar to Justice Ryan's dissent in *Gray*, in which he too stated that aggravated battery and criminal contempt by violation of a court order were two separate offenses for double jeopardy purposes since each requires distinct elements of proof, even though both offenses arise from the same course of conduct. See *People v. Gray* (1977), 69 Ill. 2d 44, 53.

Nevertheless, the State concedes that this court is bound by precedents of the Illinois Supreme Court as embodied in the *Gray* decision. Therefore, an analysis of the United States Supreme Court's decision in *Vitale*, as well as the Illinois courts' subsequent application of *Vitale*, is required to determine whether or not *Gray* was implicitly overruled by *Vitale* as the State maintains.

At issue in *Vitale* was whether the defendant's conviction for failing to reduce speed to avoid a collision barred a prosecution for involuntary manslaughter premised on the reckless operation of the motor vehicle. Our supreme court ruled in favor of the defendant, reasoning that the lesser offense, failing to reduce speed, required no proof beyond that which was necessary for conviction of the greater offense and, therefore, the greater offense was, by definition, the same as the lesser offense included within it for purposes of the double jeopardy clause. (*In re Vitale* (1978), 71 Ill. 2d 229.) Justice Underwood, who had specially concurred in *Gray* (*People v. Gray* (1977), 69 Ill. 2d 44, 53) dissented, along with Justice Ryan, and distinguished *Gray* and

*Brown* by the fact that in *Vitale* each of the charges required proof that the other did not and proof of the greater offense did not necessarily involve proof of the lesser. (*In re Vitale* (1978), 71 Ill. 2d 229, 242.) He based this view on the fact that the traffic offense need not involve death, whereas manslaughter need not involve an unlawful failure to reduce speed nor even the use of a car. He also noted that it is invariably true of a greater and lesser included offense that the lesser offense requires no proof beyond that which is required for conviction of the greater.

On *certiorari*, the United States Supreme Court vacated and remanded. It held that the double jeopardy clause would not prohibit the State criminal prosecution for involuntary manslaughter provided that the offense of manslaughter by automobile did not *always* entail proof of a failure to reduce speed. The mere possibility that the State would seek to rely on all of the ingredients necessarily included in the traffic offense to establish an element of its manslaughter case was not sufficient to bar prosecution for manslaughter by automobile. However, the court went on to state that if, as a matter of State law, a careless failure to reduce speed is *always* a necessary element of manslaughter by automobile, a trial on the latter charge would constitute double jeopardy. The court went on to add in *dictum*, however, that if, on remand the State relied on and proved the failure to reduce speed to avoid an accident as the reckless act necessary to prove manslaughter in its manslaughter prosecution, a substantial claim of double jeopardy would arise. (*Illinois v. Vitale* (1980), 447 U.S. 410, 420, 65 L. Ed. 2d 228, 238, 100 S. Ct. 2260, 2267.) The court therefore vacated and remanded the case, for the relationship under Illinois law between the crimes of manslaughter and a careless failure to reduce speed to avoid an accident was uncertain, and because the reckless act or acts the State would rely on to prove manslaughter were unknown.

As the State points out, although the *Vitale* decision focuses on the statutory elements of the first and second charges via the *Blockburger* test, the latter *dictum* referred to above seems to indicate that the double jeopardy clause will also be offended when each prosecution will, under the facts of a particular case, require proof of the same conduct. This conclusion is supported by the prior decisions of the United States Supreme Court in *Brown v. Ohio* (1977), 432 U.S. 161, 53 L. Ed. 2d 187, 97 S. Ct. 2221, and *Harris v. Oklahoma* (1977), 433 U.S. 682, 53 L. Ed. 2d 1054, 97 S. Ct. 2912.

In *Brown*, the defendant was prosecuted for auto theft after being convicted for unauthorized use of the same automobile. Because

the Ohio court of appeals had held that joyriding is a necessarily included offense of auto theft, it followed that when auto theft had been established, joyriding had been established as well, thereby not satisfying the *Blockburger* test. However, a footnote stated as follows:

"The *Blockburger* test is not the only standard for determining whether successive prosecutions impermissibly involve the same offense. Even if two offenses are sufficiently different to permit the imposition of consecutive sentences, successive prosecutions will be barred in some circumstances where the second prosecution requires the relitigation of factual issues already resolved by the first." *Brown v. Ohio* (1977), 432 U.S. 161, 166-67 n.6, 53 L. Ed. 2d 187, 195 n.6, 97 S. Ct. 2221, 2226 n.6.

In *Harris*, after a conviction for felony murder based upon a killing which occurred during the commission of a robbery, the State initiated a prosecution for the robbery. The supreme court held that the second prosecution was barred by the double jeopardy clause. Rather than applying the *Blockburger* test, the court based its decision on whether conviction of the greater offense required proof of the lesser.

When *Vitale* is read in conjunction with *Brown* and *Harris* it appears that successive prosecutions will be barred in two situations: (1) when the *Blockburger* test is not satisfied; and (2) when the prosecution of one offense would require repetition of proof already offered in the prosecution of another offense. See Thomas, *Rico Prosecutions and the Double Jeopardy/Multiple Punishment Problem*, 78 Nw. U.L. Rev. 1359, 1389 (1984).

In *People v. Zegart* (1980), 83 Ill. 2d 440, *cert. denied* (1981), 452 U.S. 948, 69 L. Ed. 2d 961, 101 S. Ct. 3094, our supreme court applied the *Vitale* analysis and concluded that a reckless homicide prosecution was barred by a prior conviction for a traffic offense based on the reckless act that led to the deaths. The court stated:

"In its pleading the State concedes, prior to trial, that it intends to sustain the manslaughter charge by introducing evidence that defendant drove across the median. While it is true that reckless homicide does not 'always' entail proof of driving across a median strip, *under the particular facts in this case*, as disclosed by the amended bill of particulars, the State does expect to rely on such conduct 'insofar as it is necessary to prove the allegations of the indictment.' In sum, the State intends to use the *factual* basis which led to the first conviction as the basis for the second conviction. We conclude that by doing so the State would be violating the double jeopardy clause of the fifth amendment to the United States Constitution ***."

(Emphasis added.) (*People v. Zegart* (1980), 83 Ill. 2d 440, 445.)
As the above excerpt indicates, the *Zegart* court applied the *Vitale dicta* relating to proof of the same conduct in reaching its decision.

Although denials of *certiorari* by the United States Supreme Court have no precedential authority, it is worth noting that three justices dissented from the denial of *certiorari* on the basis that in their opinion the *Zegart* holding was directly contrary to *Vitale*. The dissent emphasized that courts were required to look to the statutory elements of the first and second charges, not to the similarities of facts in the government's proof. (*Illinois v. Zegart* (1981), 452 U.S. 948, 69 L. Ed. 2d 961, 101 S. Ct. 3094.) The dissent supports the argument that at present a majority of the United States Supreme Court and the Illinois Supreme Court consider not only the *Blockburger* test but also the repetition of proof as decisive factors to be applied in a double jeopardy determination. See *United States v. Black* (D.D.C. 1985), 605 F. Supp. 1027 (interpreting *Vitale* to mean that even if recklessness under the statute could be demonstrated by evidence other than failing to slow down, if that was in fact what the prosecutor intended to prove, a substantial jeopardy problem was presented); *United States v. Haggerty* (D. Colo. 1981), 528 F. Supp. 1286 (interpreting *Gray* as having correctly relied on "similar conduct" in making its double jeopardy determination); *People v. Alexander* (1983), 118 Ill. App. 3d 33 (interpreting *Zegart* to mean that the State was precluded from using the same factual basis which led to the first conviction as the basis for the second conviction); *People v. Reed* (1981), 92 Ill. App. 3d 1115 (stating that if a conviction of a more serious offense could stand in a case without proof of the lesser offense, the double jeopardy claim would be vitiated); *In re C.H.* (1981), 93 Ill. App. 3d 825 (discussing the proper inquiries to be made surrounding a double jeopardy claim in light of *Vitale* and *Zegart*; see also *People v. Cox* (1985), 130 Ill. App. 3d 1073; *People v. Tate* (1982), 106 Ill. App. 3d 774.

Based on the above analysis of *Vitale*, we interpret *Gray* as being consonant with that opinion. In *Gray* defendant was convicted and punished for criminal contempt based on the striking and shooting of his wife and then tried and convicted a second time for aggravated battery based on the same proof of striking and hitting his wife. Since in *Gray* both offenses required proof of the same conduct to satisfy a necessary element, based upon the *dicta* in *Vitale*, upon which Illinois courts have since relied, we are persuaded that the *Gray* holding is not vitiated by the claim that the two offenses were not the same for purposes of the *Blockburger* test.

Here the State's focus on only the *Blockburger* test is contrary to

the total holding in *Vitale*. Reviewing the factual context here it is apparent, first, that the order of protection prohibited defendant from striking, threatening, harassing or interfering with the personal liberty of plaintiff and also prohibited defendant from entering plaintiff's home and initiating or attempting to initiate contact with her. The subsequent contempt order stated only that defendant was found to be in contempt of court, but the report of proceedings held on February 16, 1984, in Ogle County shows that on January 6, 1984, defendant was incarcerated in Ogle County on a count of aggravated battery. The information charging defendant with aggravated battery alleged that without legal justification defendant intentionally caused great bodily harm in that he struck and kicked Linda Gartner in the face with his fist and feet. Defendant was subsequently transported to Winnebago County jail, and at that time there was a hearing to determine whether defendant had violated the order of protection. Defendant was not represented by counsel at that hearing. He was found in violation of the order of protection at that time. After defendant had retained counsel, he moved for a new hearing and to have the court reconsider its finding. According to defendant's counsel, a "full blown" hearing was held on January 13, 1984, at which time evidence which was based on the same conduct as that alleged in the charge of aggravated battery was "tried in its fullest." After hearing the testimony the court again found defendant to be in violation of the order of protection and sentenced defendant to the Winnebago County jail for 30 days. No transcript of either of the proceedings referred to above was submitted to the trial court or to this court on appeal. However, at the February 21, 1984, hearing, the State stipulated to the facts as presented by defendant at the February 16 hearing.

By the State's stipulation to the facts of the contempt proceeding, it is apparent that the evidence used to prove violation of the order of protection, namely the hitting and kicking of defendant's wife, will be the same evidence relied upon by the State to prove a necessary element of the aggravated battery offense. Therefore, even if the *Blockburger* test would be satisfied, by analyzing the elements of each offense in the manner suggested by Justice Ryan's dissent in *Gray* and by the State here, the further protection set forth in *Vitale*, namely, a conviction for conduct that is a necessary element of the more serious crime for which defendant has been charged constitutes a substantial double jeopardy claim, would effectively prevent the State from proceeding on the aggravated assault charge in the present case.

We conclude that the trial court's order should be affirmed, based

on our analysis of *Vitale* and its application in the Illinois courts.

Notwithstanding this conclusion, however, we also note the unique nature of the order of protection, the distinctive function of the court's contempt powers for violations of the order and the conceivable conflict between judge and prosecutor as to who will determine when an act will be prosecuted as a criminal violation. We feel required to note that while in *People v. Totten* (1986), 143 Ill. App. 3d 130, also a double jeopardy case, decided this date, we reached a contrary result, that case involved direct contempt rather than, as here, indirect contempt.

For the foregoing reasons the judgment of the circuit court of Ogle County is affirmed.

Affirmed.

NASH, P.J., and REINHARD, J., concur.